**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ALI ALEXANDER et al., | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Case No. 1:21-CV-03308-CJN |
| NANCY PELOSI et al., | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

I. The Select Committee Is Properly Composed ........................................................ 2

II. The Subpoena to Verizon Serves a Valid Legislative Purpose ........................................................ 5

III. The Subpoena to Verizon Does Not Violate the Fourth Amendment ........................................................ 6

IV. The Subpoena to Verizon Does Not Violate Either the Stored Communication Act, 10 U.S.C. § 1039(b), or 47 U.S.C. § 222(c)(1) ........................................................ 7

V. The Subpoena to Verizon Does Not Violate the First Amendment ........................................................ 10

CONCLUSION ........................................................ 10

**TABLE OF AUTHORITIES**

**Cases**

*Barenblatt v. United States*,
360 U.S. 109 (1959) ....... 7

*Carpenter v. United States*,
138 S. Ct. 2206 (2018) ....... 6

*Digit. Realty Tr., Inc. v. Somers*,
138 S. Ct. 767 (2018) ....... 8

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) ....... 6

*English v. Trump*,
279 F. Supp. 3d 307 (D.D.C. 2018) ....... 4

*Gutierrez de Martinez v. Lamagno*,
515 U.S. 417 (1995) ....... 4

*Hubbard v. United States*,
514 U.S. 695 (1995) ....... 8

*McGrain v. Daugherty*,
273 U.S. 135 (1927) ....... 7

*McPhaul v. United States*,
364 U.S. 372 (1960) ....... 5, 6

*New York v. United States*,
505 U.S 144 (1992) ....... 7

*NFIB v. Sebelius*,
567 U.S. 519 (2012) ....... 7

**Republican Nat'l Comm. ("RNC") v. Pelosi*,
2022 WL 1294509 (D.D.C.) ....... 3, 4, 5, 6

*Trump v. Mazars USA, LLP*,
140 S. Ct. 2019 (2020) ....... 7

**United States v. Bannon*,
No. 21-670 (D.D.C.) ....... 3, 4

*United States v. Durenberger*,
48 F.3d 1239 (D.C. Cir. 1995) ....... 4

*United States v. Rostenkowski*,
59 F.3d 1291 (D.C. Cir. 1995)....................4

**Statutes**

18 U.S.C. § 1001 ....................8

18 U.S.C. § 1039 ....................8, 9

18 U.S.C. § 2711 ....................8

47 U.S.C. § 222 ....................8, 9

**Legislative & Constitutional Authorities**

167 Cong. Rec. E1151 (daily ed. Oct. 27, 2021)....................6

167 Cong. Rec. H5759 (daily ed. Oct. 21, 2021) ....................6

H. Res. 503, 117th Cong. (2021)....................1, 5

U.S. Const., Art. I, § 5, cl. 2 ....................2

**Other Sources**

Aaron R. Cooper, *Congressional Surveillance*, 70 Am. U. L. Rev. 1799 (2021)....................9

Tel. Recs. & Priv. Prot. Act of 2006, Pub. L. No. 109-476, 120 Stat. 3568 ....................9

## INTRODUCTION

Despite Plaintiff Ali Alexander's efforts to recast this litigation (Opp. 1-8) (ECF No. 25), this is not a dispute about facts. He does not contest the following facts, as stated in our opening brief (Mot. 2-6) (ECF No. 23):

- He claimed to be "the guy who came up with the idea of January 6th" in order to "build momentum and pressure" on Members of Congress who would be loath to oppose "that mob."
- He claimed that he would contact the Proud Boys and Oath Keepers to arrange for security on January 6th.
- He helped coordinate rallies in the wake of the 2020 Presidential election that spread false claims that the election had been stolen, and violence broke out in the wake of some of those rallies.
- He urged his supporters to descend on Washington, D.C., for January 6th, including via his website titled WildProtest.com. And he was a "VIP Guest" at President Trump's January 6th rally, after which he marched to the Capitol with Alex Jones and others.

Mr. Alexander insists that he was "wholly unaware of the importance of the January 6th date prior to the second half of December" and that he did not anticipate or participate in any violence. Opp. 4. Even assuming *arguendo* the truth of these assertions, they do not in any way counter the Select Committee's interest in properly understanding Mr. Alexander's role, consistent with the Select Committee's mission to "investigate and report upon the facts, circumstances, and causes relating to the January 6" attack. H. Res. 503, 117th Cong. § 3(1) (2021).

Plaintiff Christine Torre is situated differently. In light of her declaration (ECF No. 25-1) that her son, Benjamin Torre, was not on her phone plan during the relevant time period, the Select Committee has withdrawn the subpoena for her phone records, and counsel for the Select Committee has notified Verizon of the withdrawal. Ms. Torre's claims are therefore moot, and this reply brief addresses only arguments relevant to Mr. Alexander, whose opposition presents no valid reason to challenge the legitimacy of the subpoena pertaining to his records.

## ARGUMENT

### I. The Select Committee Is Properly Composed

Mr. Alexander asks this Court (Opp. 9-13) to hold that the subpoena by the Select Committee to Verizon is invalid because (according to him) the Select Committee is improperly composed. But he cites no case, and Congressional Defendants are aware of none, establishing that a person can collaterally attack in a civil suit a Congressional subpoena issued to another entity because that person alleges defects in the committee's composition. Furthermore, the Rulemaking Clause of the Constitution bars federal courts from considering Mr. Alexander's claims about the Select Committee's internal operations. *See* U.S. Const., Art. I, § 5, cl. 2. Mr. Alexander contends incorrectly that "[t]he Congressional Defendants in their Memorandum in Support of Motion to Dismiss this action have not even raised the separation of powers issue"; in fact, that argument is a key component of our motion to dismiss. Opp. 12; *see* Mot. 10, 14 (discussing application of the Rulemaking Clause); *see also id.* at 15 ("[A] court may interpret internal congressional rules only when such interpretation requires no resolution of ambiguities." (internal quotation marks omitted)).

None of the cases on which Mr. Alexander relies to avoid the Rulemaking Clause (Opp. 9-10) is relevant here. Each involved an appeal from a criminal conviction for contempt of Congress. Here, he invokes the House Rules not as a shield in a criminal proceeding, but as a

sword to attack, in a civil proceeding, a subpoena issued to a third party. The cases he cites do not stand for the proposition that a person can collaterally attack a subpoena issued to a third party when that person contends that Congress failed to follow its own rules. Furthermore, in those cases, the relevant Congressional committees did not challenge the witnesses' interpretation of the committee's rules; the committees assumed that those rules had indeed been violated. The courts therefore had no occasion to defer to the relevant Congressional committees' interpretation of their own rules, or the House's ratification of such interpretations.

As Mr. Alexander notes (Opp. 10-11), both Judge Kelly in *Republican Nat'l Comm. ("RNC") v. Pelosi*, No. 22-659, 2022 WL 1294509, at *15 (D.D.C. May 1, 2022), *appeal pending*, No. 22-5123 (D.C. Cir.), and this Court in *United States v. Bannon*, No. 21-670 (D.D.C.), have rejected the argument he presses. Indeed, no judge has ruled to the contrary, and as we noted in our opening brief (Mot. 15), two other judges have agreed.

Mr. Alexander makes four arguments (Opp. 11-13) for why this Court should not follow Judge Kelly's reasoning in *RNC* and this Court's own reasoning in *Bannon*. None is convincing.

*First*, he notes that the ruling in *RNC* has been stayed pending appeal and asks this Court to "hold in abeyance its ruling in the instant case pending disposition of the appeal in *RNC*." Opp. 11. But if courts held rulings in abeyance whenever one issue was on appeal in another case, the judicial process would be frequently and unreasonably delayed. Mr. Alexander provides no reason why this Court should not adjudicate the issue in an ordinary and timely manner. Mr. Alexander has not sought from this Court a preliminary injunction indefinitely delaying the resolution of this matter, and were he to do so he would fail under that standard.

*Second*, Mr. Alexander argues that "unlike the subpoena in *Bannon,* the Verizon subpoenas have **not** been 'ratified' by the full House." Opp. 11-12 (emphasis in original). This

argument misses the mark. The point is not that the full House endorsed a *specific* subpoena, but rather that, as Judge Kelly put it, "the House's adoption of the Select Committee's recommendations to find witnesses in contempt of Congress for their refusals to comply with Select Committee subpoenas" demonstrates that "the House views the Select Committee to be duly constituted and empowered to act under its authorizing resolution, even though the Select Committee has only nine members." *RNC*, 2022 WL 1294509, at *15. Indeed, the House has taken no action with regard to the subpoena for records involving the RNC, but Judge Kelly appropriately concluded that the House's actions with regard to other subpoenas indicated that the House believes that the Select Committee is duly constituted—which is, of course, a question of general applicability, not one with different answers for different subpoena recipients. As Judge Kelly concluded, "[i]f the Court reads § 2(a)'s 'shall' as mandatory, it would be 'interpret[ing] the Rule differently than . . . the [House] itself' and 'would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone.'" *Id.* (quoting *United States v. Rostenkowski*, 59 F.3d 1291, 1306-07 (D.C. Cir. 1995)).

*Third*, Mr. Alexander dismisses as "*dictum* at best," (Opp. 12) the Supreme Court's statement in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995)—which this Court relied upon in *Bannon*, Mot. Hr'g Tr. at 114:22-25, 115:1-3 (June 15, 2022), that "legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may'." *See also RNC*, 2022 WL 1294509, at *15 (citing *English v. Trump*, 279 F. Supp. 3d 307, 323 (D.D.C. 2018)). As Judge Kelly noted, in rejecting the same argument that Mr. Alexander makes here, "[t]he Court may intervene if doing so 'requires no resolution of ambiguities.' But a 'sufficiently ambiguous House Rule is non-justiciable.'" *RNC*, 2022 WL 1294509, at *15 (quoting *United States v. Durenberger*, 48 F.3d 1239, 1244 (D.C. Cir. 1995), and *Rostenkowski*, 59 F.3d at 1306). The

language of the resolution, read in light of the actions by the Minority Leader of the House, created ambiguity for the House to resolve. It has done so, and the Court should not reassess the House's interpretation of its own rules.

*Fourth*, Mr. Alexander tries to distinguish *RNC* by noting that Judge Kelly dismissed other allegations against the Congressional Defendants based on the Speech or Debate Clause and based on representations by Chairman Bennie G. Thompson to the recipient of the subpoena. Neither ground, however, was relevant to Judge Kelly's resolution of the improper-composition issue, nor is relevant here.

## II. The Subpoena to Verizon Serves a Valid Legislative Purpose

As Mr. Alexander notes (Opp. 14), House Resolution 503 established the Select Committee "[t]o investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex." H. Res. 503 § 3(1). The Select Committee is further authorized to recommend "corrective measures," including "changes in law, policy, procedures, rules, or regulations, that could be taken." *Id.* § 4(c). The latter task is dependent on the former: only with a proper understanding of the "facts, circumstances, and causes" of the attack can Congress appropriately recommend measures to prevent its recurrence. *Id.* § 4(a)(1).

As discussed in our opening brief and above, *see supra* at 1, Mr. Alexander participated extensively in events that preceded the January 6th attack. Understanding his connections to other persons who participated in or planned events leading up to, and on, January 6th therefore serves a valid legislative purpose—one that is not vitiated by any prior testimony before the Select Committee. *See, e.g.*, *McPhaul v. United States*, 364 U.S. 372, 381 (1960) (rejecting challenge to subpoena where "the records called for by the subpoena were not plainly

incompetent or irrelevant to any lawful purpose (of the Subcommittee) in the discharge of (its) duties" (internal quotation marks and citation omitted)).

And, contrary to Mr. Alexander's argument, Congress need not "identif[y] any draft legislation that would be better informed by Plaintiffs' phone records." Opp. 14. As Judge Kelly held in *RNC*, "the Select Committee did not have to 'declare in advance' what legislation it may recommend based on the materials at issue to show that the subpoena has a 'legitimate object.'" 2022 WL 1294509, at *17 (internal quotation marks and citations omitted); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 (1975) ("The very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises. To be a valid legislative inquiry there need be no predictable end result.").

Mr. Alexander incorrectly suggests that "the only remedies" that could address the January 6th attack would be to establish a "Ministry of Truth to restrict the content of social media" or to "provide better security." Opp. 15. For example, in a floor statement with which Chairman Thompson associated himself, Vice Chair Liz Cheney provided an illustrative, non-exhaustive list of possible legislative initiatives. *See* 167 Cong. Rec. E1151 (daily ed. Oct. 27, 2021) (statement of Chairman Thompson); 167 Cong. Rec. H5759 (daily ed. Oct. 21, 2021) (statement of Vice Chair Cheney).

**III. The Subpoena to Verizon Does Not Violate the Fourth Amendment**

Mr. Alexander incorrectly attempts (Opp. 16-18) to shoehorn the subpoena to Verizon into the ambit of *Carpenter v. United States*, 138 S. Ct. 2206 (2018). As discussed in our opening brief (Mot. 20-21), that case does not apply to the records the subpoena seeks. Mr. Alexander incorrectly asserts that the subpoenaed phone records "contain location information noting the city where the call originated and the city of the person on the other end of the call or

text message." Opp. 17. Rather, with regard to location, the subpoena seeks only the subscriber's address—not where he may have been at any moment. *See* Compl. at 5, Ex. A (ECF No. 1-3).

Nor does Mr. Alexander provide (Opp. 18) any valid reason to delay this litigation by seeking discovery from Verizon regarding the phone data that would be disclosed. He has had the subpoena since December, when Verizon sent him a copy. *See* Compl., Ex. A (letter from Verizon to Mr. Alexander dated Dec. 2, 2021). Had he any legitimate questions about the relevant data, he could have contacted the company—or, for that matter, the Select Committee.

**IV. The Subpoena to Verizon Does Not Violate Either the Stored Communication Act, 10 U.S.C. § 1039(b), or 47 U.S.C. § 222(c)(1)**

As a threshold matter, Mr. Alexander wrongly claims that the Select Committee had to identify a specific, enumerated authorization to seek specific types of information via subpoena. Opp. 22-24 (citing *NFIB v. Sebelius*, 567 U.S. 519, 535 (2012) and *New York v. United States*, 505 U.S 144, 157 (1992)). The Supreme Court has recognized that the structure of the Constitution implies that "each House has power 'to secure needed information' in order to legislate." *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (quoting *McGrain* v. *Daugherty*, 273 U.S. 135, 161 (1927)). Indeed, "the power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *Id.* (quoting *McGrain*, 273 U. S. at 174). Therefore, "[t]he scope of the power of inquiry, in short, is as penetrating and far-reaching as the power to enact and appropriate under the Constitution." *Barenblatt v. United States*, 360 U.S. 109, 111 (1959).

Thus, as long as a Congressional subpoena furthers Congress's power to enact legislation or appropriate funds—and Congress obviously may do either in order to combat an attack on its functions—it is valid absent some Constitutional or statutory constraint. None of the statutes Mr.

Alexander cites—the Stored Communications Act, 18 U.S.C. § 1039(b), and 47 U.S.C. § 222(c)(1)—is such a constraint.

As explained in our opening brief (Mot. 22-23), the prohibitions on the disclosure of non-content information under the Stored Communications Act do not extend to disclosures to Congress, because Congress is not a "governmental entity" as defined in that Act. *See* 18 U.S.C. § 2711(4) (defining "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof"). Although Mr. Alexander objects that this definition deviates from the "common sense meaning of that term," (Opp. 25) the Supreme Court has made clear that "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." *Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776 (2018) (internal quotation marks and citation omitted).

Mr. Alexander has no good response to the fact that, in *Hubbard v. United States*, 514 U.S. 695 (1995), the Supreme Court interpreted the identical phrase "department or agency of the United States" in a different statute, 18 U.S.C. § 1001, in an identical manner—to exclude entities outside of the Executive Branch. Instead of conceding that the same phrase should be interpreted the same way here, he proposes a clear-statement rule that—in contradiction to the broad scope of the Congressional power of inquiry—would have courts assume that Congress intends to restrict its own investigatory powers unless Congress expressly states that it does *not* wish to do so. But Mr. Alexander provides no reason to justify such an unprecedented rule. And the fact that Congress acted to amend 18 U.S.C. § 1001 in the wake of *Hubbard* indicates that Congress knows the consequences of using the phrase "department or agency of the United States," and knows how to revise that phrase, yet has not done so in the context of the Stored Communications Act.

Mr. Alexander attempts to sow doubt (Opp. 23) by quoting a law review article, Aaron R. Cooper, *Congressional Surveillance*, 70 Am. U. L. Rev. 1799, 1833 (2021), that asserts in the passage Mr. Alexander quotes that it may be "ambiguous" as to whether the Stored Communications Act allows Congress to obtain content information.  But as we noted in our opening brief (Mot. 24), the article's author sees no ambiguity as to the relevant question here: whether the Act allows Congress to obtain *non-content* information via subpoena.  *See* Cooper, *supra* at 1834 ("Even the most conservative reading of the SCA, as it now stands, permits Congress to obtain all forms of non-content data through its subpoena power.").

Mr. Alexander is similarly misguided in suggesting (Opp. 18-22) that subpoena compliance by Verizon would violate 18 U.S.C. § 1039(b)—a statute that he mentions only once, in passing, in his complaint, *see* First Am. Compl. ¶ 86 (ECF No. 7), and does not reference in his prayer for relief.  Not part of the Stored Communication Act, Section 1039(b) was enacted decades later in the Telephone Records and Privacy Protection Act of 2006.  *See* Pub. L. No. 109-476, § 3(a), 120 Stat. 3568.  Section 1039(b) exempts transfers of phone record information where "otherwise permitted by applicable law."  As discussed above, *see supra* at 7, the Constitution allows Congress to obtain information by subpoena in furtherance of a valid legislative purpose.  The "applicable law," in other words, is the Constitution itself.  Thus, to the extent the subpoena is otherwise valid, Section 1039(b) poses no barrier.

Mr. Alexander fares no better with his claim (Opp. 25-27) that 47 U.S.C. § 222(c)(1)—which his complaint mentioned only in the same passing reference as 10 U.S.C. § 1039(b), *see* First Am. Compl. ¶ 86—bars compliance with the subpoena.  By its terms, the proscriptions of Section 222(c)(1) apply "[e]xcept as required by law."  Compliance with a valid subpoena, of course, is required by law, and thus Mr. Alexander's Section 222(c)(1) claim fails.

## V. The Subpoena to Verizon Does Not Violate the First Amendment

Finally, Mr. Alexander's First Amendment claim (Opp. 27-29) fails. As we stated in our opening brief (Mot. 24-25), typical First Amendment balancing is not warranted here, because a valid Congressional subpoena is involved.

Even if any such balancing were appropriate, Mr. Alexander's claim would still founder. The Select Committee investigation into the January 6th attack is plainly a "compelling justification," (Opp. 27) for the information that the Select Committee seeks—which, contrary to Mr. Alexander's insinuation, does not include and would not reveal the membership list of any organization. While Mr. Alexander complains that the Select Committee seeks information about his "free speech and association activities," *id.*, that would be true of *any* Congressional request for an individual's communications—and does not suffice to defeat it. A thorough investigation into the causes of a politically motivated attack will inevitably analyze how individuals associated with each other. That some "colleagues, business prospects, former clients, and associates" are allegedly reluctant to speak to Mr. Alexander, *id.* (quoting First Am. Compl. ¶ 95), does not come close to meeting the standard required to demonstrate a valid associational injury. *See* Mot. 25-26. And even if it did, it would be outweighed by the Select Committee's compelling interest in investigating the attack.

## CONCLUSION

The Complaint should be dismissed in its entirety.

Respectfully submitted,

/s/ *Douglas N. Letter*
DOUGLAS N. LETTER
*General Counsel*
TODD B. TATELMAN
*Principal Deputy General Counsel*
ERIC R. COLUMBUS
*Special Litigation Counsel*
MICHELLE S. KALLEN
*Special Litigation Counsel*
STACIE M. FAHSEL
*Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

John A. Freedman*
Paul Fishman*
Amy Jeffress*
David J. Weiner*
John M. Hindley*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com
David.Weiner@arnoldporter.com
John.Hindley@arnoldporter.com

SHER TREMONTE LLP
Justin M. Sher*
Michael Tremonte*
Noam Biale*
Maya Brodziak*
Kathryn E. Ghotbi*
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com

MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

July 12, 2022

[*] Appearing pursuant to 2 U.S.C. § 5571(a).

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

                                                      */s/ Douglas N. Letter*
                                                     Douglas N. Letter